09-02-04   09:28am   From-Nati...erican Bank, NA          30398965....          T-668   P.002/006   F-372

| | | |
|---|---|---|
| MARVIN L. ADAMS | NATIVE AMERICAN BANK, N.A. | SSN # 574244081 |
| 6014 LUND STREET | 125 NORTH PUBLIC SQUARE | Loan Number 1111 |
| JUNEAU, AK 99801 | P.O. BOX 730 | Date 09-02-2004 |
| | BROWNING, MT 59417 | Maturity Date 03-31-2015 |
| | | Loan Amount $ 170,000.00 |
| | | Renewal Of ___ |
| **BORROWER'S NAME AND ADDRESS** | **LENDER'S NAME AND ADDRESS** | |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of ONE HUNDRED SEVENTY THOUSAND AND NO/100 _____ Dollars $ 170,000.00

☒ **Single Advance:** I will receive all of this principal sum on _____ 09-02-2004 _____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $_____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 09-02-2004 _____ at the rate of _____ 6.500 % per year until 09-02-2004

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be 2.000 PERCENT ABOVE _____ the following index rate: THE HIGHEST RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE USA'S THIRTY LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.125

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 09-03-2004 A change in the interest rate will take effect ON THE SAME DAY

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____% or less than _____%. The rate may not change more than _____% each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☒ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ ACTUAL/365 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☒ at a rate equal to STATED RATE PLUS 4.0%

☒ **LATE CHARGE:** If a payment is made more than _____ 10 _____ days after it is due, I agree to pay a late charge of 5.000% OF THE LATE AMOUNT WITH A MIN OF $25.00

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 42 QUARTERLY INTEREST PAYMENTS RANGING FROM $0.00 TO $3632.88 BEGINNING 12-31-2004 AND 10 ANNUAL PRINCIPAL PAYMENTS OF $17,000.00 BEGINNING 03-31-2005. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE AFTER THE 1ST PAYMENT AND EVERY PAYMENT THEREAFTER.

ADDITIONAL TERMS:

# EXHIBIT 1

## Page 1 of 15

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
SECURITY AGREEMENT DATED 9-2-04 HEREIN

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

Signature for Lender

_Pam Nesius_
PAM NESIUS, SENIOR VICE PRESIDENT

**PURPOSE:** The purpose of this loan is PURCHASE NON-COMMERCIAL AIRCRAFT

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

_Marvin L. Adams_
MARVIN L. ADAMS

UNIVERSAL NOTE   V04.20
Ex_____ © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 3/4/2002          (page 1 of 2)

09-02-04   03:23am   From-Nat'l American Bank, NA                3039885S...        T-669  P.003/006  F-972

**DEFINITIONS:** As used on page 1, "US" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account of other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).
I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |
| $ | | $ | | $ | % | $ | |

Exp*ress* © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-N 3/4/2002

(page 2 of 1)

EXHIBIT 1
Page 2 of 18

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| MARVIN L. ADAMS<br>6014 LUND STREET<br>JUNEAU, AK 99801 | NATIVE AMERICAN BANK, N.A.<br>125 NORTH PUBLIC SQUARE<br>P.O. BOX 730<br>BROWNING, MT 59417 |
| 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 | 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 |

☐ If checked, refer to the attached addendum for additional Debtors and their signatures.

## CONSUMER SECURITY AGREEMENT

The date of this Consumer Security Agreement (Agreement) is 08-07-2004_____ . Unless otherwise indicated in writing to you, my address listed above is my principal residence. The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me," and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts. Where Debtor is not the Borrower under the Secured Debts, "I," "me," and "my" refer to the owner of the Property subject to this Agreement and "Borrower" refers to the obligor on the Secured Debts.

**SECURED DEBTS.** This Agreement will secure all sums advanced by you under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one): ☒ 1  ☐ _____
_____ (Borrower) owe(s) to you:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements (describe):

☒ **All Debts.** If checked, the Property may also serve as collateral for future advances. All present and future debts, even if this Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Agreement is a commitment to make future loans or advances. This Agreement will not secure any debt for which you fail to give any required notice of the right of rescission, or any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising out of the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me (or Borrower, if not the same) under any loan or credit agreement.

**PROPERTY DESCRIPTION.** The Property is all the collateral given to secure the Secured Debts and is described as follows:

1976 CESSNA 206 G VIN - S/N - U20603539  /  REG # - N8787U AND 1976 CESSNA 206 G AIRCRAFT, REGISTRATION # N8787U

ENGINE: CONTINENTAL MODEL ISO 520F21B
PROPELLER: MCCAULEY MODEL D3A320904R

EXHIBIT **1**
Page **3** of **14**

SIGNATURES. I agree to the terms on pages 1 and 2 of this Agreement and acknowledge receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| | NATIVE AMERICAN BANK, N.A. |
| _____<br>MARVIN L. ADAMS | _____<br>PAM NESUS<br>SENIOR VICE PRESIDENT |

GENERALLY. This Agreement...  overned by the laws of the  state in which you are located. In the event of a dispute, the  exclusive forum, venue, and place of jurisdiction will be the state  in which you are located, unless otherwise required by law. My  obligations under this Agreement are independent of the  obligations of any other Debtor. You may sue me individually or  together with any other Debtor. You may release any part of the  Property and I will remain obligated under this Agreement for the  remaining Property. The duties and benefits of this Agreement will  bind and benefit the successors and assigns of me and you. No  modification of this Agreement is effective unless made in writing  and signed by me and you. If any provision of this Agreement is  unenforceable, then the unenforceable provision will be severed  and the remaining provisions will still be enforceable. Whenever  used, the plural includes the singular and the singular includes the  plural. Section headings are for convenience only and should not  be used to define or interpret the terms of this Agreement. Time is  of the essence.

NAME AND LOCATION. My name and address indicated on  page 1 are my exact legal name and my principal residence. I will  provide you with at least 30 days notice prior to changing my name  or principal residence.

WARRANTIES AND REPRESENTATIONS. I have the power  and authority to enter into this Agreement. The execution and  delivery of this Agreement will not violate any agreement  governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to  you in writing. Your claim to the Property is ahead of the claims  of any other creditor, except as disclosed in writing to you prior to  any advance on the Secured Debts. The Property has not been used  for any purpose that would violate any laws or subject the Property  to forfeiture or seizure.

DUTIES TOWARD PROPERTY. I will protect the Property and  your interest against any competing claim. Except as otherwise  provided in this Agreement, I will keep the Property in my  possession at the address indicated on page 1 of this Agreement. I  will keep the Property in good repair and use it only for personal,  family, or household purposes. I will not use the Property for a  purpose that will violate any laws or subject the Property to  forfeiture or seizure. I will immediately inform you of any loss or  damage to the Property. You have the right of reasonable access to  inspect the Property.

I will keep books, records, and accounts about the Property and  my assets in general, to which I will allow you reasonable access. I  will pay all taxes and assessments levied or assessed against me or  the Property. I will not sell, lease, license, or otherwise transfer or  encumber the Property without your prior written consent. You do  not authorize any sale or other disposition of the Property. Any  sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or  your designated third party's, possession or control), I will, upon  receipt, deliver any proceeds and products of the Property to you. I  will provide you with any notices, documents, financial statements,  reports, and other information relating to the Property I receive as  the owner of the Property.

INSURANCE. I agree to keep the Property insured against the  risks reasonably associated with the Property until the Property is  released from this Agreement. I may provide the required  insurance through an existing policy of insurance that I own or  control, or through a policy that I buy. I have free choice in the  selection of insurance company, subject to applicable law. I will  maintain this insurance in the amounts you require and have the  insurance company name you as loss payee on any insurance  policy. I will give you and the insurance company immediate  notice of any loss. You may apply the insurance proceeds toward  what is owed on the Secured Debts. If the insurance proceeds do  not cover the amounts I owe you, I will pay the difference. You  may require additional security as a condition of permitting any  insurance proceeds to be used to repair or replace the Property. If  you acquire the Property in damaged condition, any rights to any  insurance policies and proceeds will pass to you to the extent of the  Secured Debts. I will immediately notify you of cancellation or  termination of insurance.

I am required to maintain insurance on the Property to  protect your interest. If I fail to maintain the required  insurance, or fail to provide you with evidence of insurance, I  understand and agree that:
(1) you may (but are not required to) place insurance on the  Property to protect your interest, which will not cover my  equity in the Property;
(2) the insurance you provide may be written by a company  other than one I would choose and may be written at a  higher rate than I could obtain if I purchased the  insurance; and
(3) I will pay for the costs of any Property insurance you  provide.

Experia; © 2000 Bankers Systems, Inc., St. Cloud, MN  Form SA-CONO  11/8/2000

AUTHORITY TO PERFORM. I authorize you to do anything  you deem reasonably necessary to protect the Property and your  security interest in the Property. If I fail to perform any of my  duties under this Agreement, you are authorized, after providing  me with any required notice and opportunity to perform, to  perform the duties or cause them to be performed and add the costs  of performance to the Secured Debts. These authorizations include,  but are not limited to, permission to pay for the repair,  maintenance and preservation of the Property and taking any action  to obtain or preserve the benefits and rights of the Property. Your  authority to perform for me will not create an obligation to  perform and your failure to perform will not preclude you from  exercising any other rights under the law or this Agreement. If you  come into actual or constructive possession of the Property, you  will preserve and protect the Property to the extent required by  law. Your duty of care with respect to the Property will be  satisfied if you exercise reasonable care in the safekeeping of the  Property or in the selection of a third party in possession of the  Property.

PURCHASE MONEY SECURITY INTEREST. If this is a  purchase money loan (the loan proceeds are used to purchase the  collateral), I authorize you, at your option, to disburse the loan  proceeds directly to the seller of the Property. The portion of the  Property purchased with loan proceeds will remain subject to your  purchase money security interest until the Secured Debts are paid  in full. Payments on any non-purchase money loan also secured by  this Agreement will not be applied to the purchase money loan.  Payments on the purchase money loan will be applied first to the  non-purchase money portion of the loan, if any, and then to the  purchase money portion in the order in which the purchase money  Property was acquired. If the purchase money Property was  acquired at the same time, then payments will be applied in the  order you select. No security interest will be terminated by  application of this formula.

RESIDENTIAL PROPERTY. If the Property subject to this  Agreement includes a residence, the existence of a default and your  remedies for default will be determined by applicable law and, to  the extent not prohibited by law, this Agreement.

DEFAULT. Subject to any limitations in the RESIDENTIAL  PROPERTY section, I will be in default if:
(1) I (or Borrower, if not the same) fail to make a payment in full  when due;
(2) Anything else happens that causes you to reasonably believe  that the prospect of payment, performance, or realization of the  Property is significantly impaired.

REMEDIES. After I default, and after you give any legally  required notice and opportunity to cure the default, you may:
(1) make all or any part of the Secured Debts due, including sums  advanced under the terms of this Agreement, and accrue  interest at the highest contract interest rate;
(2) use any and all remedies you have under any instrument or  agreement evidencing or pertaining to the Secured Debts;
(3) use any available remedies allowed by state or federal law;
(4) require me to gather the Property and make it available to you  in a reasonable fashion (unless prohibited by law).

If you repossess the Property, you may keep or dispose of the  Property as provided by law. You may apply the proceeds of any  disposition first to your expenses of collection and enforcement,  which includes reasonable attorneys' fees and legal expenses to the  extent not prohibited by law, and then to the Secured Debts.  Unless prohibited by law, and following any required explanation  of deficiency, I (or Borrower, if not the same) will be liable for the  deficiency if what you receive from the sale does not satisfy the  Secured Debts.

By choosing any one or more of these remedies you do not give up  your right to use any other remedy. You do not waive a default by  electing not to use any remedy.

WAIVERS. I waive all claims for damage caused by your acts or  omissions where you acted reasonably and in good faith. I waive  all rights I have now or in the future as a homestead or personal  property exemption in the Property.

PERFECTION OF SECURITY INTEREST. I authorize you to  file a financing statement covering the Property. I agree to comply  with, facilitate, and otherwise assist you in connection with  obtaining possession of or control over the Property for purposes  of perfecting your security interest under the Uniform Commercial  Code.

NOTICE AND ADDITIONAL DOCUMENTS. Where a notice  is required, I agree that 10 days prior written notice will be  reasonable notice to me under the Uniform Commercial Code or  other applicable state law. Notice to one party is notice to all  parties. I agree to sign, deliver, and file any additional documents  and certifications you may consider necessary to perfect, continue,  and preserve my obligations under this Agreement and to confirm  your lien status on any Property.

EXHIBIT 1
Page 4 of 11

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT is made as of the 2nd day of September 2004 between Marvin Adams (hereinafter referred to as "Debtor") and Native American Bank, NA, a national banking institution, having a place of business at the address shown above (hereinafter referred to as "Secured Party").

## W I T N E S S E T H :

WHEREAS, for and in consideration of the execution of this Security Agreement by Debtor, Secured Party has agreed to advance funds to Marvin Adams ("Borrower") to be secured by certain aircraft and related property; and

WHEREAS, Secured Party desires to obtain, and Debtor desires to grant, a security interest in certain property of Debtor, now owned or hereafter acquired, and the proceeds thereof, to secure repayment of an indebtedness described in Section 2 hereof;

NOW, THEREFORE, in consideration of the premises and the mutual promises and covenants hereinafter set forth, the parties hereby agree as follows:

**Section 1.**    **Security Interest**. As security for the payment of the indebtedness more particularly described in Section 2 of this Security Agreement, Debtor hereby assigns and grants to Secured Party a security interest in and to the property described on Exhibit A hereto (the "Collateral"). The term "Aircraft" shall refer to all of the property described in paragraphs 1, 2, 3, 4 and 5 of Exhibit A.

**Section 2.**    **Indebtedness Secured Hereby**. The security interest granted herein by Debtor secures and shall secure:

(a)    Payment of all indebtedness and obligations evidenced by that certain Promissory Note dated September 2, 2004 herewith, executed by Borrower to Secured Party, in the original principal amount of $170,000.00, and any and all extensions, replacements, modifications, amendments, increases, decreases, renewals and restatements thereof, therefor and thereto, and all substitutions and notes and other instruments given from time to time therefor, and all changes in form thereof (herein all of the foregoing being collectively referred to as the "Note");

(b)    Payment of all costs and expenses incurred by Secured Party in enforcing or protecting its rights with respect to the Collateral or the indebtedness secured by the Collateral, including, but not limited to, reasonable attorneys' fees; and

(c)    Payment of all future advances made by Secured Party for taxes, levies, insurance and/or repairs to or maintenance of the Collateral.

For purposes of this Security Agreement, all such obligations secured by the Collateral shall be referred to as "Indebtedness."

09000N:90-000601:323633.2:NASHVILLE

4/9/04

2

EXHIBIT 1

Pg 5 16

NOTWITHSTANDING ANYTHING SET FORTH HEREIN, THE DEBTOR IS NOT INDIVIDUALLY LIABLE FOR THE NOTE.

Section 4. **Debtor's Representations to Secured Party**. Debtor hereby represents the following facts to be true and correct as of the date hereof:

(a) Debtor is the true and lawful owner of the Collateral and Debtor holds the respective interest shown on Exhibit C hereto;

(b) Debtor has a good right to grant a security interest in the Collateral;

(c) There are no advances, liens, security interests or encumbrances against the Collateral;

Section 5. **Debtor Warranties and Covenants to Secured Party**. Debtor hereby warrants, covenants and agrees that, until the Indebtedness secured hereby shall have been paid in full or unless it shall have received the prior written consent of the Secured Party, Debtor will satisfy the following:

(a) Protection and Use of Collateral. Debtor will keep the Collateral free from any adverse lien, security interest, or encumbrance (other than the security interest granted herein) and in good order and repair and will not waste or destroy the Collateral or any part thereof. Debtor will not use the Collateral in violation of any regulations, statute or ordinance or of any judgments, citations, decrees or orders of any judicial or administrative authority;

(b) Sale or Impairment of Collateral. Debtor will not sell, lease or offer to sell, lease or otherwise transfer, dispose of or encumber the Collateral, or any interest therein without prior notification of Secured Party;

(c) Maintain Insurance. Debtor shall maintain insurance, in form, amounts, and with companies in all respects reasonably satisfactory to Secured Party, insuring the Collateral against loss from all risks determined by Secured Party to be appropriate. Debtor shall also maintain comprehensive general liability insurance (including passenger insurance) in form, amounts and with companies in all respects satisfactory to Secured Party. Secured Party shall be designated as an additional insured and loss payee under the terms of the policies evidencing such insurance and shall receive a minimum of 30 days written cancellation notice from the company or insurer issuing such policy or policies. If Debtor fails to furnish said insurance or fails to pay the premiums therefor, Secured Party may do so or may obtain insurance of its interest only, adding the amount of any such premium thereof to the other amounts secured hereby; provided, however, Secured Party is under no obligation or duty to pay such premiums or obtain or maintain such insurance. Debtor hereby assigns to Secured Party any return or unearned premiums which may be due upon cancellation of any of said policies for any reason whatsoever, and directs all insurers to pay Secured Party any amount so due, unless the Indebtedness has been previously fully satisfied. In order to collect such return or unearned premiums or the benefit of such insurance, the Secured Party acting through any officer, agent or employee

09009(N:90-00600L);23.2:NASHVILLE

4/9/AM                    3

EXHIBIT _1_

Page _6_ of _18_

deem necessary to perfect and/or continue the perfection of the security interest created by this Security Agreement and to protect the Collateral. Debtor further agrees to pay all costs and fees for filing any termination statements.

      (i)      Principal Place of Business. Debtor represents and warrants that its address for notice purposes is set forth above, that Debtor will not change such address without giving Secured party thirty (30) days prior written notice thereof and insuring that Secured party's first-priority security interest shall remain in effect. Debtor shall give Secured Party at least thirty (30) days prior written notice of any change in its name or its structure, or in the jurisdiction of its organization or in the location of its residence and at Debtor's expense shall take all steps necessary or advisable to preserve the perfection and priority of the security interests granted to Secured Party herein.

      (j)      Location of Collateral. The Collateral shall be located at the locations set forth on Exhibit B hereto, except as permitted under Section 5 hereof.

      (k)      Replacements and Additions to Collateral. Debtor may make replacements and substitutions to the Aircraft only with Secured party's prior written consent, which shall not be unreasonably withheld as long as such replacements and substitutions are at least equal in value to the items being replaced, and as long as such replacements and substitutions continue to be subject to Secured Party's perfected security interest. Debtor agrees to execute and record, at its expense, any notices or amendments that Secured Party may deem necessary to protect its security interest in connection with such replacements or additions.

**Section 5.**      **Debtor's Special Representations, Warranties and Covenants Regarding Aircraft.** Debtor hereby represents to Secured Party, and warrants, covenants and agrees that, until the Indebtedness secured hereby shall have been paid in full or unless it shall have received the prior written consent of the Secured Party, Debtor will satisfy the following:

      (a)      Location of Aircraft. The Aircraft shall be based and kept at location(s) identified on Exhibit B hereto, and shall be hangered or tied down at such location(s), except when in use by Debtor in the ordinary course of business; provided, however, (i) that in no event shall the Aircraft be, or be permitted by Debtor to be, kept at any location or locations other than that specified above for any period in excess of thirty (30) days without Secured Party's written consent, not to be unreasonably withheld, (ii) in no event shall the Aircraft be, or be permitted by Debtor to be, used, operated, kept or located (by Debtor or any other person) at any location outside the continental United States of America. In no event shall the Aircraft be, or be permitted by Debtor to be, used, operated, kept or located at any place outside the geographical limits of the insurance required under this Agreement.

      (b)      Operational Control. Debtor represents and warrants that the Debtor is and shall remain responsible for operational control of the Aircraft, and that Debtor understands its responsibilities for compliance with applicable regulations of the Civil Aeronautics Board, the Federal Aviation Administration (the "FAA"), and/or the Administrator of the Federal Aviation Administration, or any person, governmental department, bureau,

EXHIBIT _1_

Page _8_ of _18_

commission or agency succeeding to the functions of any of the foregoing, or any agency, commission or bureau of similar authority of any other government or political subdivision thereof having jurisdiction over the Aircraft (collectively, "Aeronautics Authorities"). Debtor shall not permit any pilot to fly the Aircraft except for the pilot(s) specifically covered by Debtor's insurance policies and Debtor may charter the Aircraft as long as such pilot(s) fly the Aircraft and Debtor therefore remains in operational control (through its pilot) the Aircraft.

(c)    Maintenance and Repair. Debtor shall, at Debtor's cost and expense, comply with all applicable service, maintenance, repair and overhaul regulations, airworthiness directives and instructions of the FAA and other Aeronautics Authorities, and all appropriate maintenance, service, repair and overhaul manuals and service bulletins published by the manufacturers of the Aircraft. Debtor shall maintain all records, logs, flight manuals, maintenance manuals and other materials required by the FAA and other Aeronautics Authorities, and shall keep current and in full force and effect all appropriate airworthiness certificates. All of the foregoing records, logs, flight manuals and other manuals or materials shall constitute part of the Collateral, shall be made available by Debtor for inspection by Secured Party at such times and places as Secured Party may reasonably request and will be delivered to Secured Party upon any repossession of the Collateral. All service, inspections, overhauls, replacements, substitutions, alterations, maintenance, directives, repair and improvements with respect to or affecting the Aircraft shall be made and performed at Debtor's sole cost and expense by appropriately licensed, certified and qualified personnel, all in accordance with applicable standards of the FAA and other Aeronautics Authorities and the provisions of any policy or policies of insurance with respect to the Aircraft.

(d)    Regulatory Compliance. Debtor shall comply with and operate the Aircraft in conformity with all laws of any jurisdiction in which the Aircraft may be operated and with all rules of the FAA and all other Aeronautics Authorities, and any other legislative, executive, administrative or judicial body exercising any power or jurisdiction over the Aircraft to the extent that such laws and rules affect the operation, maintenance or use of the Aircraft, and Debtor shall conform or obtain conformance therewith at no expense to Secured Party and shall maintain the Aircraft in proper condition for operation under such laws and rules. The Aircraft shall be flown and operated only by pilots and operators who are properly and currently certificates, licensed, and qualified under and in compliance with all laws, regulations, rules, orders or directives of the Aeronautics Authorities and the terms of any policy or policies of insurance with respect to the Aircraft.

Section 7.    Debtor' Use of Collateral. Prior to the occurrence of an Event of Default (as hereinafter defined) Debtor may use the Collateral in the ordinary course of Debtor's business; provided, upon the occurrence of an Event of Default Debtor's right to so use the Collateral shall terminate until further written notice from the Secured Party.

Section 8.    Events of Default. The term "Event of Default", whenever used in this Security Agreement, shall mean any one or more of the following events or conditions that is not cured within the applicable time period set forth below:

EXHIBIT 1

Page 9 of 15

(a)     a default in the prompt payment when due of any portion of the Indebtedness; or

(b)     breach of any covenant, warranty, agreement, duty, obligation, promise or representation contained in this Agreement, or under any other promissory note, security agreement, guaranty, document, instrument or agreement executed or delivered from time to time in connection with the Note or any of the Indebtedness (all of the foregoing being collectively referred to as the "Documents"); or

(c)     the occurrence of any breach, default or Event of Default under the Note or any of the other Documents, that is not cured within the cure period (if any) expressly set forth therein; or

(d)     loss or destruction which is not fully insured, or unauthorized sale, transfer or disposition (without the prior written consent of Secured Party) or unauthorized encumbrance of any of the Collateral.

**Section 8.** **Remedies.** Secured Party shall have the following remedies hereunder:

(a)     Acceleration and Foreclosure, Etc. Upon the happening of any Event of Default specified in Section 7 above, and at any time thereafter, at the option of the Secured Party, any and all Indebtedness secured hereby shall become immediately due and payable without presentment or demand or any notice to Debtor or Borrower or any other person obligated thereon and Secured Party shall have and may exercise any or all of the rights and remedies of a secured party under the Uniform Commercial Code as adopted in the State of Alaska and as otherwise contractually granted herein or under any other applicable law or under any other agreement executed by Debtor in favor of Secured Party, including, without limitation, the right and power to sell, at public or private sale or sales, or otherwise dispose of or utilize such portion of the Collateral and any part or parts thereof in any manner authorized or permitted under said Uniform Commercial Code after default by a Debtor, and to apply the proceeds thereof toward payment of any costs and expenses and reasonable attorneys' fees and legal expenses thereby incurred by Secured Party and toward payment of the obligations in such order or manner as Secured Party may elect. As an essential part of the bargained-for consideration running to the Secured Party, Debtor hereby expressly grants to Secured Party the contractual right to purchase any or all of the Collateral at private sale any time after ten (10) days notice of such sale shall have been sent to Debtor by Secured Party.

Waiver of Notice, Etc. Debtor agrees that if such notice of default is mailed, postage prepaid, or sent by telegram, charges prepaid, to Debtor at the addresses stated at the beginning of this document at least ten (10) days before the time of the proposed sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement of giving of notice, and the proposed sale may take place any time after such thirty (30) day period without the necessity of sending another notice to Debtor. Secured Party may postpone and reschedule any proposed sale at its option without the necessity of giving Debtor further notice of such fact as long as the rescheduled sale occurs within 90 days of the originally scheduled sale.

090CON-90-600001 371193-2 NASHVILLE

4/9/04

7

EXHIBIT  *1*

Page  *10*  of *18*

(c)    Method of Sale of Collateral Approved. All recitals in any instrument of assignment or any other document or paper executed by Secured Party incident to sale, transfer, assignment or other disposition or utilization of the Collateral or any part thereof hereunder shall be sufficient to establish full legal propriety of the sale or other action taken by Secured Party or of any fact, condition or thing incident thereto and all prerequisites of such sale or other action shall be presumed conclusively to have been performed or to have occurred.

(d)    Preservation of Collateral and Proceeds. In addition to the foregoing provisions, following an Event of Default, and upon Secured Party's demand, Debtor agrees to assemble the Collateral at its usual place of business or, at Secured Party's option, to assemble the Aircraft and other Collateral and deliver it, at Debtor's expense, to an airfield or other location designated by Secured Party, and in general, to make all of the Collateral available to Secured Party immediately.

## Section 9.    Secured Party's Powers and Duties with Respect to Collateral.

(a)    Secured Party shall be under no duty to collect any amount which may be or become due on any of the Collateral now or hereafter pledged hereunder, to realize on Collateral, to collect principal, interest or dividends, to keep the same insured, to make any presentments, demands or notices of protest, in connection with any of the Collateral, or to do anything for the enforcement and collection of Collateral or the protection thereof.

(b)    Not limiting the generality of any of the foregoing but in amplification of the same, Secured Party shall be in no way liable to or responsible for any diminution in the value of the Collateral from any cause whatsoever, other than the active misfeasance of Secured Party.

(c)    Debtor agrees to pay all taxes, charges, transfer fees and assessments against the Collateral and to do all things necessary to preserve and maintain the value and collectability thereof, and on the failure of Debtor to so do, Secured Party may, after giving Debtor written notice of its intention to do so, make such payments and advance such sums on account thereof as Secured Party, in Secured Party's discretion, deems desirable. Debtor agrees to reimburse Secured Party immediately upon demand for all such payments and advances plus interest thereon at the rate of 10% per annum or at such lesser rate as may be the maximum rate allowed by applicable law, repayment of all of which is secured by this Security Agreement and the Collateral.

EXHIBIT 1
Page 11 of 14

(c)    Secured Party, or any of its agents, shall have the right to call at reasonable times at the Debtor's place or places of business at intervals to be determined by Secured Party, and without hindrance or delay, to inspect, audit, check, and make extracts from the books, records, journals, orders, receipts, correspondence, and other data relating to the Collateral.

Section 10.    **General Authority**. Effective immediately, but exercisable by Secured Party only upon the occurrence of an Event of Default, Debtor hereby irrevocably appoints Secured Party as Debtor's true and lawful attorney-in-fact of each of the Debtor with full power of substitution, in Secured Party's name or Debtor's name or otherwise, for Secured Party's sole use and benefit, but at Debtor's cost and expense, to exercise at any time and from time to time all or any of the following powers with respect to all or any of the Collateral:

(a)    to demand, sue for collection, receive and give acquittance for any and all monies due or to become due upon or by virtue thereof;

(b)    to receive, take, endorse, assign and deliver any and all checks, notes, drafts, documents and other property taken or received by Secured Party in connection therewith; and

(c)    to extend the time of payment and to make any allowance and other adjustments with reference thereto;

Provided, however, the exercise by Secured Party of or failure to so exercise any such authority shall in no manner affect Debtor's or Borrower's liability to Secured Party hereunder or in connection with the Indebtedness; and provided further, that Secured Party shall be under no obligation or duty to exercise any of the powers hereby conferred upon it and it shall have no liability for any act or failure to act in connection with any of the Collateral. Secured Party shall not be bound to take any steps necessary to preserve rights in any instrument, contract or lease against prior parties.

Section 11.    **Survival of Agreements, Representations and Warranties**. All agreements, representations and warranties contained herein or made in writing by or on behalf of Debtor in connection with the transactions contemplated hereby shall survive the execution and delivery of this Security Agreement, any investigation at any time made by Secured Party or on its behalf, and the acquisition and disposition of the Indebtedness. All statements contained in any certificate or other instrument delivered by or on behalf of Debtor pursuant hereto or in connection with the transactions contemplated hereby shall be deemed representations and warranties by Debtor hereunder.

Section 12.    **Dealings With Debtor**. It is expressly understood and agreed that notwithstanding anything else contained in this Security Agreement, Secured Party may, for all purposes hereof deal solely with Debtor in connection therewith, and nothing herein shall be construed so as to require dealings with, consent of, or notice to any other parties or persons.

Section 13.    **Agreement Not Exclusive Remedy**. This Agreement shall not prejudice the right of Secured Party, at its option, to enforce collection of the Indebtedness by suit or in any

09000N:90-060001-97    382:NASHVILLE

4/9/04

9

EXHIBIT ___1___

Page _12_ of _18_

lawful manner. If Secured Party has additional security, then it may resort to such other security for the payment of the Indebtedness secured hereby. No right or remedy in this Security Agreement or in any instrument evidencing the Indebtedness is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to every other right or remedy herein or therein conferred, or now or hereafter existing, by contract, at law or in equity or by statute.

Section 14.    **Non-Waiver Provision.** No delay or omission by Secured Party to exercise any right or remedy shall impair such right or remedy or any other right or remedy or shall be construed to be a waiver of any Event of Default or an acquiescence therein; and every right and remedy herein conferred or now or hereafter existing by contract or at law or in equity or by statute may be exercised separately or concurrently and in such order and as often as may be deemed expedient by Secured Party. Not limiting the generality of the foregoing, pursuit or exercise of any right or remedy conferred herein, or by law or in equity or by statute, shall not be, and shall not be considered to be, an election against, waiver or relinquishment of, any other right or remedy.

Section 15.    **Severability.** The invalidity or unenforceability of any of the rights or remedies herein provided in any jurisdiction shall not in any way affect the right to the enforcement in such jurisdiction or elsewhere of any of the other rights or remedies herein provided.

Section 16.    **Applicable Law.** This Security Agreement is not effective until signed by the Secured Party at its offices in Denver, Colorado, and this Security Agreement is being delivered in the State of Colorado. This Security Agreement shall be construed and enforced in accordance with and governed by the substantive law of Alaska, except to the extent pre-empted by laws of the United States of America.

Section 17.    **Binding Agreement.** This Security Agreement shall be binding upon and inure to the benefit of the successors, representatives and assigns of the parties hereto.

Section 18.    **Joint and Several.** All promises, obligations, agreements, representations, warranties, covenants, and undertakings of the Debtor hereunder is its joint and several promise, obligation, agreement, representation, warranty, covenant and undertaking.

Section 19.    **Entire Agreement.** This Agreement contains the entire Security Agreement between the Secured Party and the Debtor and supersedes all prior agreements and understandings relating to the subject matter hereof. It may not be changed or terminated orally, but may only be changed by an agreement in writing signed by the party or parties against whom enforcement of any waiver, change, modification, extension, discharge or termination is sought.

Section 20.    **Captions.** The captions of this Security Agreement are for the purpose of reference only and shall not limit or otherwise affect any of the terms hereof.

Section 21.    **Notices.** All notices, certificates, requests, consents and other communications hereunder shall be in writing and shall be deemed received when mailed by first class registered or certified mail, postage prepaid, or sent by telegram, charges prepaid, as follows:

09060N:90-000001.2.2:NASHVILLE

4/9/04

10

EXHIBIT _1_

Page _13_ of _14_

(a)   If to Secured Party, to the address as it appears at the beginning of this Security Agreement, to the attention of Timothy Green, Assistant Vice President.

(b)   If to the Debtor, to the addresses as such appear at the beginning of the Security Agreement.

or at such other address as either party may designate by written notice to the other party in accordance herewith.

Section 22.   **Counterparts**. This Security Agreement may be executed in counterparts.

IN WITNESS WHEREOF, this Security Agreement has been executed and delivered as of the date first above written.

**DEBTOR:**

Marvin Adams

*Marvin L Adams*

EXHIBIT  1
Page 14 of 14

STATE OF    Colorado    )

                            )

COUNTY OF    Denver    )

    Before me,   Carol J Wadleigh  , a Notary Public of said County and State, personally appeared   Marvin L. Adams  , with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and that he as such Borrower executed the foregoing instrument for the purposes therein contained, by signing his name.

    Witness my hand and seal, at Office in   Denver  , this 18th day of Oct , 20().

                                *Carol J. Wadleigh*
                                 Notary Public

My Commission Expires: 2|2|06

                                        CAROL J WADLEIGH
                                         Notary Public
                                         State of Colorado

                          12

EXHIBIT 1
Page 15 of 18

## EXHIBIT A

### Describing Collateral

The Collateral consists of, and Debtor hereby jointly and severally grants Secured Party a security interest in, all of the Debtor's right, title and interest in and to the following, whether now owned or existing, or hereafter acquired or arising:

Aircraft and Engines. One (1) CESSNA U206G, Serial Number U206-39, Registration No. 8787Q, Tail Number: N8787Q, including all engines and equipment associated therewith, including without limitation 1 propeller engine, manufactured by Continental engine type ISO520F21B, serial number 579310.

Avionics. All avionics, electronic equipment, software and other equipment pertaining to the Aircraft, including without limitation all navigation, communication, instrumentation and communication equipment now or hereafter installed on the Aircraft.

Attachments Furnishings, and Substitutions. All equipment, furnishings, accessories, parts, components, attachments, and accessions attached to or used in or on any of the foregoing, and all substitutions, replacements and modifications of any of the foregoing.

Books and Records. All books, records, maintenance logs, maintenance manuals, flight manuals, flight logs, and other data relating to the foregoing.

Proceeds. All proceeds (including insurance proceeds) and products of or relating to the foregoing.

EXHIBIT **1**

Page **16** of **17**

## EXHIBIT B

### Locations of Collateral

Location(s) of Books and Records:          3030 N. Chandelle Court

                                           Wasilla, AK  99654


Location(s) of Aircraft:                   3030 N. Chandelle Court

                                           Wasilla, AK  99654

EXHIBIT __1__
Page__17__ of__17__



Recorders Office Search   UCC Search

Natural Resources [          ] find



# Recorder's Office
## Alaska Department of Natural Resources

State of Alaska > Natural Resources

Search Menu | Name Search | Date Search | Document Number Search | Document Type Search | Doc.Input/UnverifiedStatus

## UCC Central File - Document Display

**Selected Document:** 2005-601643-1
**in District:** 500 - UCC CENTRAL

| See Index Codes | Cannot view images? | Image Unavailable |
| --- | --- | --- |

| | |
| --- | --- |
| Document Year: 2005 Number: 601643 Suf: 1 | District: 500 - UCC CENTRAL |
| Date Recorded: 12/27/2005 Time: 11:09AM     Pages: 1 | |
| Record Status: Active | Associated Doc: 2005-601643-1 |
| | Note: Click on the Associated Document link to see all related records |
| Index: FS - FINANCING STATEMENT | |
| Desc: FINANCING STATEMENT | |
| Debtor - ADAMS MARVIN L | 2984 BRANDYWINE AVENUE ANCHORAGE, AK 99502 |
| Secured - NATIVE AMERICAN BANK NA | 125 NORTH PUBLIC SQUARE BROWNING, MT 59417 |

All information has been displayed

[ Back ]

**UCC documents will be shown as active or inactive. Active does not necessarily mean effective. A Wildcard reference means it does not tie to an active filing.**

---

Name Search | Date Search | Document Number Search | Document Type Search | Doc.Input/UnverifiedStatus
UCC Central Home Page | Recorder's Office Home Page | Dept.of Natural Resources Home Page

**Last updated on 07/21/2009.**

**NOTICE: Documents are entered in nonsequential batches. Temporary document number gaps may exist in current data.**

If you identify a possible indexing error (typo, reversed names, etc) or can not locate the record you are trying to find please contact us.

**All documents are provided as a public service for your convenience. Updates and corrections occur on a daily basis; however, the State of Alaska Shall not incur any liability for errors or omissions with respect to the information provided on this web site.**

---

Have a question about the Recorders Office? Please contact your district office.
Report technical problems with this page to the Webmaster.

Site optimized for Netscape 7, IE 6 or above.
This site also requires that all COOKIES must be accepted.

State of Alaska   Natural Resources   Copyright   Privacy   System Status   Public Information Center